# UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

---

### No. 12-3504

---

**SCOTT MCMAHON**,
individually and on behalf of a class,

**Plaintiff-Appellant,**

v.

**LVNV FUNDING, LLC,**
**RESURGENT CAPITAL SERVICES, L.P.**
**ALEGIS GROUP, LLC,**
**and TATE & KIRLIN ASSOCIATES, INC.,**

**Defendants-Appellees.**

---

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division
The Honorable Charles P. Kocoras, Judge

No. 12 C 1410

---

## APPELLANT'S REPLY BRIEF

---

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Tiffany N. Hardy
EDELMAN, COMBS, LATTURNER
& GOODWIN, LLC
120 South LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

---

## ORAL ARGUMENT REQUESTED

# TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    I.    Plaintiff's Claims Were Not Moot.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    II.    Defendants' Merits Arguments Are Unpersuasive . . . . . . . . . . . . . . . . . . . . . 5

        A.    A Debt Collector Does Not Have Some Sort of Right to Collect Time-Barred Debts As Long as No Threat is Made . . . . . . . . . . . . . . . . . . . . . 5

        B.    State Law Remedies Are Not Adequate.. . . . . . . . . . . . . . . . . . . . . . . . . 8

        C.    The Agency Action Is By the Agency, Not the Staff . . . . . . . . . . . . . . . 9

        D.    The CFPB Consent Orders Interpret What "Deception" Means . . . . . . . . 9

        E.    The Specific Disclosures Required in the FDCPA Are Not Exclusive . 11

        F.    The FTC, CFPB, OCC, FDIC and FRB Consent Orders Are Entitled to Either *Chevron* or *Skidmore* Deference . . . . . . . . . . . . . . . . . . . . . . . . . 13

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

TYPE VOLUME CERTIFICATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## TABLE OF AUTHORITIES

### *Cases*

*Altria Group, Inc. v. Good*, 555 U.S. 70 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*American Express Centurion Bank*
(FDIC-12-315b, FDIC-12-316k, 2012-CFPB-0002) . . . . . . . . . . . . . . . . . . . . . . . . . 7, 13

*American Express Bank, FSB* (2012-CFPB-0003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 13

*American Express Travel Company, Inc.* (2012-CFPB-0004) . . . . . . . . . . . . . . . . . . . . . . . 7, 13

*Andrews v. Professional Bureau of Collections of Maryland, Inc.*, 270 F.R.D. 205
(M.D. Pa. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Bartlett v. Heibl*, 128 F.3d 497 (7th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 480 F.3d 470 (7th Cir. 2007) . . . . . . . 12, 13

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*,
467 U.S. 837 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 8, 13

*City of Arlington, Tex. v. F.C.C.*, 133 S.Ct. 1863, 1873,
2013 WL 2149789 (May 20, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 8, 13

*Commonwealth v. Fremont Investment & Loan*, 452 Mass. 733, 897 N.E. 2d 548 (2008) . . 13, 15

*Croysdale v. Franklin Savings Association*, 601 F.2d 1340, 1344 n.4 (7th Cir. 1979) . . . . . . . . 14

*Damasco v. Clearwire Corp.*, 662 F.3d 891, 896 (7th Cir. 2011) . . . . . . . . . . . . . . . . . . . . 1, 4, 5

*Easterling v. Collecto, Inc.*, 692 F.3d 229, 234-235 (2nd Cir. 2012) . . . . . . . . . . . . . . . . . . . . . 6

*Ellis v. Solomon and Solomon, P.C.*, 591 F.3d 130, 135-137 (2nd Cir. 2010) . . . . . . . . . . . . . 12

*Encyclopaedia Britannica, Inc. v. FTC*, 605 F.2d 964 (7th Cir. 1979) . . . . . . . . . . . . . . . . . . 10

*Espenscheid v. Directsat USA, LLC*, 688 F.3d 872, 874 (7th Cir. 2012) . . . . . . . . . . . . . . 3, 4, 5

*FTC v. Colgate-Palmolive Co.*, 380 U.S. 374, 384-85 (1965) . . . . . . . . . . . . . . . . . . . . . . . . 8, 14

*FTC v. Mandel Bros.*, 359 U.S. 385, 391 (1959) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Goldman v. Cohen*, 445 F.3d 152, 156-157 (2nd Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Grolier, Inc. v. FTC*, 699 F.2d 983 (9th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Hernandez v. Asset Acceptance, LLC*, 279 F.R.D. 594 (D. Colo. 2012) . . . . . . . . . . . . . . . . . . 3

*Huertas v. Galaxy Asset Management*, 641 F. 3d 28, 33 (3rd Cir. 2011) . . . . . . . . . . . . . . . . . . 6

*In re TJX Companies Retail Security Breach Litigation*,
  564 F.3d 489, 496-97 (1st Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Jackson v. Consolidated Rail Corp.*, 717 F.2d 1045, 1055 (7th Cir. 1983*)* . . . . . . . . . . . . . . . . 4

*J. B. Williams Co. v. FTC*, 381 F.2d 884, 888 (6th Cir. 1967) . . . . . . . . . . . . . . . . . . . . . . . . 10

*Jeter v. Credit Bureau, supra*, 760 F.2d 1168 (11th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Johnson v. Revenue Mgmt. Corp.*, 169 F.3d 1057, 1060 (7th Cir. 1999) . . . . . . . . . . . . . . . . . . 6

*Kline v. Mortgage Electronic Security Systems*, 3:08cv408, 2010 WL 6298271,
  2012 U.S. Dist. LEXIS 55366 (S.D. Ohio April 19, 2012) . . . . . . . . . . . . . . . . . . 13, 14

*Lobianco v. Hayter*, No. 1:13cv41–MW–GRJ, 2013 WL 2097414 (N.D. Fla., May 14, 2013) . . 3

*Lox v. CDA, Ltd.*, 689 F.3d 818, 825 (7th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5, 12

*Magee v. Portfolio Recovery Associates*, No. 12 C 1624, 2012 WL 3560996
  (N.D. Ill. Aug. 15, 2012), later opinion 2013 WL 239100 (N.D. Ill., Jan. 17, 2013) . . . . 6

*McKenna v. Nat'l Action Fin. Services, Inc.*, No. 07–60889–CIV,
  2008 WL 2389016 (S.D. Fla. June 10, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Midtec Paper Corp. v. United States*, 857 F.2d 1487, 1497 (D.C. Cir.1988) . . . . . . . . . . . . . . 13

*Nat'l Cable & Communications Ass'ns v. Brand X Internet Services*,
  545 U.S. 967, 982 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 8

*Olvera v. Blitt & Gaines*, 431 F.3d 285 (7th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*PMP Assocs., Inc. v. Globe Newspaper Co.*, 366 Mass. 593, 596, 321 N.E.2d 915 (1975) . . . . 15

*Pollock v. Bay Area Credit Service, LLC*, No. 08–61101–Civ.,
  2009 WL 2475167 (S.D. Fla., August 13, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Queen v. Nationwide Credit, Inc.*, 10cv1445, 2010 WL 4006676 (N.D. Ill. 2010) . . . . . . . . . . 3

*Ramson v. Layne*, 668 F.Supp. 1162, 1168-69 (N.D.Ill. 1987) . . . . . . . . . . . . . . . . . . . . . . . . 14

*Rice v. Midland Credit Management, Inc.*, No. 12 C 1395, 2013 WL 1174729
  (N.D. Ill. March 20, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Russell v. Equifax A.R.S.*, 74 F.3d 30, 34 (2nd Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Schubach v. Household Finance Corp.*, 375 Mass. 133, 135, 376 N.E.2d 140 (Mass. 1978) . . . 15

*Simeon Mgmt. Corp. v. FTC*, 579 F.2d 1137, 1145 (9th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . 10

*Skidmore v. Swift & Co*, 323 U.S.134, 140 (1944) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Smith v. No. 2 Galesburg Crown Finance Corp.*, 615 F.2d 407, 417-418 (7th Cir. 1980) . . . . . . 14

*State of Alaska v. O'Neill Investigations*, 609 P.2d 520 (1980) . . . . . . . . . . . . . . . . . . . . . . . 13, 15

*Thomas v. Simpson & Cybak,* 392 F.3d 914, 919-20 (7th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . 11

*Trans Union Corp. v. FTC*, 81 F.3d 228, 230 (D.C. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States of America v. Asset Acceptance, LLC,*
    No. 8:12-cv-182-T-27EAJ (M.D. Fla. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 13

*Warner-Lambert Co. v. FTC*, 183 U.S. App. D.C. 230, 562 F.2d 749, 756 (D.C. Cir. 1977) . . . 9

*Wilcox v. Allied Interstate, Inc.*, No. 1:11–CV–01425– MHS–GGB,
    2012 WL 959331 (N.D. Ga. Mar. 20, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

## *Statutes and Other Authorities*

15 U.S.C. §45 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

15 U.S.C. § 1692 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8, 9, 11, 12, 13, 14

15 U.S.C. § 1692b . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

15 U.S.C. §§ 1692e . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11, 13

15 U.S.C. §§ 1692e(2)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

15 U.S.C. §§ 1692e(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

15 U.S.C. §§ 1692f . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 12, 13

15 U.S.C. §1692f(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

15 U.S.C. §§ 1692g . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

64 Consumer Fin. L.Q. Rep. 372 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Fed. R. Civ. P. 15(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Federal Social Security Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Federal Trade Commission Act §5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

Goldsmith, Timothy, et al, *Testing Materiality Under the Unfair Practices Acts:*
   *What Information Matters When Collecting Time-Barred Debts?* . . . . . . . . . . . . . . . 7, 8, 10

*The Structure and Practices of the Debt Buying Industry*, 2013 . . . . . . . . . . . . . . . . . . . . . . 7

United States Constitution: Article III . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

## SUMMARY OF THE ARGUMENT

Plaintiff's claims were not mooted by defendants' settlement offer because the offer did not provide a "complete recovery" to plaintiff. The offer was contingent on plaintiff waiving his right to appeal the dismissal of his class claims, it did not provide for any incentive award, and it only provided for attorney's fees and costs incurred in the prosecution of his "individual" claims. A settlement offer that does not clearly provide for full attorney's fees and expenses incurred in connection with the case does not fully satisfy a plaintiff's rights and is not effective to moot a case.

Defendants' suggestion that plaintiff could have avoided having his claims mooted by including in his motion for reconsideration a request in the alternative that the district court certify a class is disingenuous. Plaintiff's motion for reconsideration was filed four days after the district court dismissed the original complaint. It obviously took some amount of time to analyze the ruling and prepare the motion for reconsideration. By the logic of defendants' argument, defendants could have made a settlement offer mooting plaintiff's claims *one minute* after the entry of the court's dismissal order. There must be an exception to the mootness doctrine when proceedings in a case require alteration of the class definition and a settlement offer is made before the plaintiff has had a "'reasonable opportunity to seek certification'." *Damasco v. Clearwire Corp.*, 662 F.3d 891, 896 (7th Cir. 2011).

With respect to the merits, a debt collector cannot affirmatively represent that a debt is not time-barred, or is legally enforceable, regardless of whether a threat of suit is made or not. *Lox v. CDA, Ltd.*, 689 F.3d 818, 825 (7th Cir. 2012). It follows that an implied false representation that a debt is legally enforceable is also actionable. Moreover, if five agencies decide, or a study shows, that the non-disclosure that a debt is time-barred is materially misleading to the unsophisticated consumer, courts should heed that guidance. And an agency has the right to adopt positions that are contrary to prior judicial decisions. *Nat'l Cable & Communications Ass'ns v. Brand X Internet Services*, 545 U.S. 967, 982 (2005). Otherwise, "The effect would be to transfer any

number of interpretive decisions—archetypal *Chevron* questions, about how best to construe an ambiguous term in light of competing policy interests—from the agencies that administer the statutes to federal courts. We have cautioned that 'judges ought to refrain from substituting their own interstitial lawmaking' for that of an agency.'" *City of Arlington, Tex. v. F.C.C.*, 133 S.Ct. 1863, 1873, 2013 WL 2149789 (May 20, 2013).

**ARGUMENT**

## I.    Plaintiff's Claims Were Not Moot

Defendants' discussion of the mootness issue is completely unpersuasive.

First, contrary to the representation in defendants' brief, plaintiff was **not** "offered complete recovery". The "settlement offer" was contingent on Mr. McMahon's waiver of his right to appeal. Defendants do not dispute that plaintiff had the right to appeal the dismissal of the class claims in the district court's July 5, 2012 order. An offer which requires surrender of that right is not one for "complete recovery." In addition, since an appeal was filed, the offer was void by its terms.

Plaintiff clearly had the right to appeal in order to protect his right to an incentive award. *Espenscheid v. Directsat USA LLC*, 688 F.3d 872 (7th Cir. 2012). Defendants did not tender an amount sufficient to pay any potential incentive award.

Defendants also expressly refused to pay any attorney's fees or expenses relating to the class issues, offering only "costs incurred related to his *individual* claims; "reasonable attorney fees related to the *individual* claims of plaintiff"; and "any other reasonable relief determined by the court to be necessary to fully satisfy all of the *individual* claims that were or that could have been asserted by the plaintiff in the lawsuit." (SA 32; emphasis added) An offer that does not clearly provide for full attorney's fees and expenses incurred in connection with the case does not fully satisfy plaintiff's rights and is not effective to moot a case. *Queen v. Nationwide Credit, Inc.*, 10cv1445, 2010 WL 4006676 (N.D. Ill. 2010); *Lobianco v. Hayter*, No. 1:13cv41–MW–GRJ,  2013 WL 2097414 (N.D. Fla., May 14, 2013); *McKenna v. Nat'l Action Fin. Services, Inc.*, No. 07–60889–CIV, 2008 WL 2389016 (S.D. Fla. June 10, 2008); *Hernandez v. Asset Acceptance, LLC*, 279 F.R.D. 594 (D. Colo. 2012); *Wilcox v. Allied Interstate, Inc.*,  No. 1:11–CV–01425– MHS–GGB, 2012 WL 959331 (N.D. Ga. Mar. 20, 2012); *Pollock v. Bay Area Credit Service, LLC*,  No. 08–61101–Civ., 2009 WL 2475167 (S.D. Fla., August 13, 2009);

*Andrews v. Professional Bureau of Collections of Maryland, Inc.*, 270 F.R.D. 205 (M.D. Pa. 2010).

Defendants argue (Def.Br., pp. 15-16) that in *Espenscheid* the defendant agreed that the denial of class certification could be appealed, but it is fundamental that subject matter jurisdiction cannot be conferred by "consent, collusion, laches, waiver, or estoppel." *Jackson v. Consolidated Rail Corp.*, 717 F.2d 1045, 1055 (7th Cir. 1983). The only reason the agreement was necessary in *Espenscheid* was to dispel the inference that would otherwise be drawn from a settlement that the named plaintiffs had released the right to appeal. But if a plaintiff whose request for class certification is denied and who receives payment of his individual damages has no right to appeal the class issue by virtue of Article III of the Constitution, the *Espenscheid* defendant's agreement that an appeal forbidden by Article III could be prosecuted would not confer jurisdiction on this court to hear the appeal. Mr. McMahon did not settle, so there was no need to dispel any inference of release in this case.

Second, defendants argue (Def.Br., p. 15) that "the plaintiff here did not have to wait until after the motion to reconsider was ruled upon. His motion to reconsider, filed more than a month before defendants offered full settlement, could have in the alternative sought certification of the new class he later proposed after the case had been mooted."

This argument is disingenuous. It does not answer the problem that a district court's rulings in processing a case may require amendment or alteration of the originally proposed class. In particular, the district court's order dismissing the original complaint and class claims was entered on July 5, 2012. The motion for reconsideration (Dkt. 45) was filed on July 9, 2012. On defendants' theory, they could have made the exact same offer and mooted the case *one minute* after the July 5, 2012 opinion was issued, as opposed to one hour after the order of August 13, 2012.  The problem is the same  – even if plaintiff files a class motion with the complaint, as required by *Damasco v. Clearwire Corp.*, 662 F.3d 891 (7th Cir. 2011), it is not possible to

4

anticipate every ruling and every development regarding discovery or evidence or the law that might require some change in the class.

The only logical answer is that once a class motion has been filed the class cannot be mooted "unless . . . the movant has been dilatory." *Espenscheid*, 688 F.3d at 874. There can be an "exception to mootness in potential class actions where defendants offer relief to named plaintiffs before they have 'a reasonable opportunity to seek certification.'" *Damasco*, 662 F. 3d at 896. The plaintiff and the district court are entitled to a reasonable time to respond to developments in the case. Otherwise, unless a plaintiff guesses at *exactly* what the evidence will support and the district court will uphold in terms of both substantive allegations and class definition, any case can be mooted at will, even if a class motion is filed with the complaint and the litigation is prosecuted diligently thereafter.

Finally, defendants assert that the relation-back provision of Fed. R. Civ. P. 15(c) is "obviously" irrelevant, without citing anything. The Rule recognizes that under appropriate circumstances an amended pleading should be treated as having been filed at the time a prior pleading was filed.

## II.     Defendants' Merits Arguments Are Unpersuasive

### A.     A Debt Collector Does Not Have Some Sort of Right to Collect Time-Barred Debts As Long as No Threat is Made

Defendants[1] assert that a debt collector has some sort of right to collect a time-barred debt as long as there is no threat of litigation. This argument is not consistent with the law of this Circuit and proves too much. A debt collector could not affirmatively represent that the debt is *not* time-barred, or *is* legally enforceable, even without a threat. *Lox v. CDA, Ltd.*, 689 F.3d 818, 825 (7th Cir. 2012) (letter stating that attorney's fees could be awarded against a debtor violated

---

[1]  The liability of the various defendants is not at issue on this appeal. However, it bears noting that the liability of LVNV Funding LLC was not "based on an allegation Resurgent and LVNV are under common ownership and management" (Def.Br., p. 2 n. 1). They are not only under common ownership and management, but Resurgent is the agent of LVNV pursuant to a written agreement and power of attorney that LVNV has executed in favor of Resurgent.

5

the FDCPA where there was no contractual or statutory basis for fees, even absent a threat, because "[I]t is improper under the FDCPA to imply that certain outcomes might befall a delinquent debtor when, legally, those outcomes cannot come to pass."); *Easterling v. Collecto, Inc.*, 692 F.3d 229, 234-235 (2nd Cir. 2012) (statement that student loan could never be discharged in bankruptcy, unaccompanied by any threat, is false and violated FDCPA).

It follows that (i) an implied representation to the effect that a debt is legally enforceable, when it is not, is also actionable and (ii) if an agency decides or evidence shows that consumers are likely to understand any collection activity as constituting such a representation, affirmative disclosure may be required to make the statements made – the demand for payment or offer of settlement – not misleading.

Defendants rely heavily on cases decided before the Federal Trade Commission ("FTC") determined that affirmative disclosures are necessary to avoid deception in this context and a *pro se* case in which the plaintiff did not make any argument based on the agencies' position (or, indeed, any coherent argument).[2]  (Def.Br., pp. 1, 4-5) Contrary to defendants (Def.Br., p. 1), "The Third and Eight [sic] Circuits" have not "addressed the issue presented here" of whether the agencies' position on what is required to avoid deception in collecting time-barred debts should be given weight; they have never considered that position. Of the cases cited at Def.Br., pp. 4-5, the only ones that even considered the issue before this court are *Magee v. Portfolio Recovery Associates*, No. 12 C 1624, 2012 WL 3560996 (N.D. Ill. Aug. 15, 2012); and  *Rice v. Midland Credit Management, Inc.*, No. 12 C 1395, 2013 WL 1174729 (N.D. Ill. March 20, 2013). *Magee* turned on insufficient pleadings; a later decision at 2013 WL 239100 (N.D.Ill., Jan. 17, 2013), adopted some of plaintiff's positions. A motion to reconsider in *Rice* is pending.

Defendants' argument that such decisions take precedence over the agencies' position ignores the relative roles of courts and agencies, as well as this court's consistent holding, *Johnson v. Revenue Mgmt. Corp.*, 169 F.3d 1057, 1060 (7th Cir. 1999), that federal judges are ill-

---

[2]  *Huertas v. Galaxy Asset Management,* 641 F.3d 28, 33 (3rd Cir. 2011).

equipped to gauge the impact of language on unsophisticated consumers. If five agencies provide guidance, or a survey or other evidence shows that this information is material and its omission misleading, the court should follow such guidance or evidence.

Here, on January 30, 2013 the FTC published a report, "The Structure and Practices of the Debt Buying Industry," http://www.ftc.gov/os/2013/01/debtbuyingreport.pdf, which reaffirms its position in the *United States of America v. Asset Acceptance, LLC,* No. 8:12-cv-182-T-27EAJ (M.D. Fla. 2012), *American Express Centurion Bank* (FDIC-12-315b, FDIC-12-316k, 2012-CFPB-0002), *American Express Bank, FSB* (2012-CFPB-0003) and *American Express Travel Company, Inc.* (2012-CFPB-0004) cases. The report cites a journal article (Timothy E. Goldsmith & Natalie Martin, *Testing Materiality Under the Unfair Practices Acts: What Information Matters When Collecting Time-Barred Debts?* 64 Consumer Fin. L.Q. Rep. 372 (2010)) that describes a study which establishes that disclosure to a consumer in a collection letter that a debt is time-barred is material to the consumer. Goldsmith and Martin conducted "an empirical study that compares how consumers react to two different collection letters, one in which the recipients are told explicitly that the debt being collected is time-barred, and one in which they are not given this information" (Goldsmith & Martin, *supra* 373). The study found that consumers who are aware that a debt is legally enforceable will not pay it in a statistically significant number of cases.

Obviously, a consumer who is strapped for cash and has difficulty paying all of his debts should logically start with the ones on which he can be sued.  Moreover, nondisclosure of the time-barred nature of a debt works a fraud on creditors with recent debts. Debts which are past or approaching the statute of limitations are sold for next to nothing. "The Structure and Practices of the Debt Buying Industry," *supra*, pp. 23-24) Creditors who actually advanced funds are deprived of payment in favor of aggressive debt buyers who paid a penny or two on the dollar and are willing to deceive debtors.

The FTC found the Goldsmith study persuasive. Plaintiff's counsel have since retained Dr. Goldsmith, who will testify to the above conclusions and how they apply to this case.

While the position of the FTC, Consumer Financial Protection Bureau ("CFPB"), Office of the Comptroller of the Currency ("OCC"), Federal Deposit Insurance Corporation (" FDIC") and the Federal Reserve Bank ("FRB") goes further than prior judicial decisions, there is no question but that an agency has the right to adopt positions which go beyond or even are contrary to prior judicial decisions. *Nat'l Cable & Communications Ass'ns v. Brand X Internet Services*, 545 U.S. 967, 982 (2005). Otherwise, "The effect would be to transfer any number of interpretive decisions—archetypal *Chevron* questions, about how best to construe an ambiguous term in light of competing policy interests—from the agencies that administer the statutes to federal courts. We have cautioned that 'judges ought to refrain from substituting their own interstitial lawmaking' for that of an agency.'" *City of Arlington, Tex. v. F.C.C.*, 133 S.Ct. 1863, 1873, 2013 WL 2149789 (May 20, 2013).

There is no question but that the word "deceptive," as used to describe the impact of language and conduct on unsophisticated consumers, is extremely broad and that the FTC (and now other agencies) was called upon to "define[] [it] with particularity by the myriad of cases from the field of business.'" *FTC v. Colgate-Palmolive Co.*, 380 U.S. 374, 384-85 (1965). The fact that, in the absence of agency construction, courts were not willing to go as far as the FTC, CFPB and other agencies now require is not a valid objection to that construction.

### B.    State Law Remedies Are Not Adequate

In enacting the FDCPA, Congress expressly found, 15 U.S.C. §1692(b), that "Existing laws and procedures for redressing these injuries [unfair debt collection practices] are inadequate to protect consumers." Notwithstanding this finding, defendants urge that the question of when collection of time-barred debts should violate the FDCPA turns on whether, as a matter of state law, a statute of limitations merely affects judicial remedies or extinguishes the debt.

Defendants' argument again proves too much. Under Illinois law, and that of most other states, a statute of limitations is an affirmative defense. Using defendants' logic, it is permissible to file suit on time-barred debts in the hope that the unsophisticated consumer will not realize they are time-barred. Even defendants concede that is not permissible.

Furthermore, defendants' distinction between extinguishing the remedy and extinguishing the debt is exactly the sort of distinction that a Philadelphia lawyer will make, but not an unsophisticated consumer. *Russell v. Equifax A.R.S.,* 74 F.3d 30, 34 (2nd Cir. 1996). For the same reason, attempts to draw fine distinctions between "financial liability" and "settlement" indicate that there is good reason to follow the agencies' position. That defendants find it necessary to rely on such distinctions indicates that they are operating at a level beyond the comprehension of an unsophisticated consumer.

### C.      The Agency Action Is By the Agency, Not the Staff

Defendants analogize (Def.Br., p. 7) the agencies' position in filing cases to the FTC staff commentary on the FDCPA, which is not binding. However, the filing of a case by the FTC has to be voted upon by the Commissioners, as does the acceptance of a consent decree. Similarly, the filing of cases by the CFPB, OCC, and other agencies is likewise an act of the agency rather than its staff.

### D.      The CFPB Consent Orders Interpret What "Deception" Means

Defendants assert that "The CFPB consent orders do not interpret the FDCPA." (Def.Br., p. 1) The consent orders interpret §5 of the Federal Trade Commission Act, 15 U.S.C. §45, which prohibits "unfair" and "deceptive" acts and practices. These are the exact same terms used in 15 U.S.C. §§1692e and 1692f. The FDCPA is patterned after the FTC Act. *Jeter v. Credit Bureau, supra*, 760 F.2d 1168 (11th Cir. 1985).

Under the FTC Act, the concept of "deception" has long been held to require affirmative disclosures if they are necessary to make the defendant's words or conduct not misleading. *Warner-Lambert Co. v. FTC*, 183 U.S. App. D.C. 230, 562 F.2d 749, 756 (D.C. Cir. 1977)

(corrective advertising designed to correct misinformation give to past buyers); *Grolier, Inc. v. FTC*, 699 F.2d 983 (9th Cir. 1983) (mandatory disclosures to prospective book purchasers); *Encyclopaedia Britannica, Inc. v. FTC*, 605 F.2d 964 (7th Cir. 1979) (same); *Simeon Mgmt. Corp. v. FTC*, 579 F.2d 1137, 1145 (9th Cir. 1978) ("[f]ailure to disclose material information may cause an advertisement to be false or deceptive within the meaning of the FTCA [Federal Trade Commission Act] even though the advertisement does not state false facts").

Affirmative disclosures may be required even when the source of deception is the unwarranted assumption of the consumer. For example, in *J. B. Williams Co. v. FTC*, 381 F.2d 884, 888 (6th Cir. 1967), the court found a violation of FTCA §5 based on the manufacturer's failure to disclose that "Geritol" was useful only to individuals who were deficient in one of the vitamins or minerals contained in the product and required affirmative disclosure of "the negative fact that a great majority of persons who experience these symptoms do not experience them because there is a vitamin or iron deficiency." The source of the deception was the unwarranted assumption by the consumer that the symptoms are indicative of a condition for which "Geritol" was effective. "While the advertising does not make the affirmative representation that the majority of people who are tired and rundown are so because of iron deficiency anemia, and the product Geritol will be an effective cure, there is substantial evidence to support the finding of the Commission that most tired people are not so because of iron deficiency anemia, and the failure to disclose this fact is false and misleading because the advertisement creates the impression that the tired feeling is caused by something which Geritol can cure." (381 F.2d at 889)

Similarly, here the FTC and four other agencies with authority to determine what is "deceptive" concluded that the mere making of a demand for payment is likely to mislead a substantial number of unsophisticated consumers into believing that the debt is legally enforceable. The Goldsmith study backs up that conclusion.[3] Accordingly, the agencies have

---

[3] Logically, references in collection communications to "settlement" would reinforce the message that the debt is legally enforceable. In response to an inquiry concerning a debt, the response that the debt is recent or recently acquired also reinforces the message.

taken the position that a debt collector seeking to collect a time-barred debt must affirmatively disclose that it is time barred.

The evidence will show that LVNV has in fact begun making such disclosures, and requires debt collectors that it hires to make them as well.

**E.     The Specific Disclosures Required in the FDCPA Are Not Exclusive**

In light of this history, there is no merit to defendants' position that the affirmative disclosures mandated by the FDCPA are exclusive.  (Def.Br., p. 2)  Section 1692e prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt"; the list of specific requirements is provided "Without limiting the general application of the foregoing. . . ."  It is clear from this language that the specific requirements do not constrict the established meaning of "deceptive."

This court has in fact imposed affirmative disclosure requirements under the general prohibition of deception in the FDCPA. In *Bartlett v. Heibl*, 128 F.3d 497 (7th Cir. 1997), defendants' letter threatened legal action within the 30-day validation period by demanding that the debtor make payment within one week or other suitable arrangements.  The letter also contained a paraphrase of §1692g's language. Even though the letter did not misstate either parties' legal rights, this court  found that the letter was misleading as a matter of law because it contained the seemingly contradictory statements that the debtor had 30 days to verify his debt and that he could also be sued in one week. It required that if action is threatened within the validation period, the letter affirmatively disclose that if the consumer exercised his right to validate the debt, collection activity would be suspended until validation was furnished.

Similarly, in *Thomas v. Simpson & Cybak,* 392 F.3d 914, 919-20 (7th Cir. 2004), the court held that where a validation letter and a summons are sent in proximity to one another, the debt collector must disclose that exercise of validation rights does not relieve the consumer from the need to follow the instructions in the summons, in order to prevent the consumer from being deceived into defaulting. Nothing in the FDCPA mandates such a disclosure, other than the

11

general prohibition of deception. *Accord*, *Goldman v. Cohen*, 445 F.3d 152, 156-157 (2nd Cir. 2006); *Ellis v. Solomon and Solomon, P.C.*, 591 F.3d 130, 135-137 (2nd Cir. 2010).

Defendants substantially misstate the cases they cite in this portion of their brief. Thus, while in *Olvera v. Blitt & Gaines*, 431 F.3d 285 (7th Cir. 2005), the court questioned why Congress would want to incorporate state law in 15 U.S.C. §1692f(1), it proceeded to acknowledge that the inquiry was required, analyzing what rate of interest the unlicensed assignee of a creditor licensed to make loans at over 9% by the Illinois Department of Financial Institutions was permitted to collect as a matter of Illinois law. Subsequently, in *Lox v. CDA, Ltd.*, 689 F.3d 818, 825 (7th Cir. 2012), the court held that a reference to attorney's fees in a collection letter violated the FDCPA because attorney's fees were not available under applicable Illinois statutory and common law. It is not possible to determine the "legal status of any debt" (15 U.S.C. §1692e(2)(A)) or what action can "legally be taken" (15 U.S.C. §1692e(5)) or what "interest, fee, charge, or expense incidental to the principal obligation" is "permitted by law" without reference to non-FDCPA law relating to the debt.

Defendants also rely on *Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 480 F.3d 470 (7th Cir. 2007). In *Beler*, after a judgment was entered against the plaintiff, the defendant law firm caused a citation to discover assets to be served on plaintiff's bank. *Beler*, 480 F.3d at 472. The citation advised the bank that exempt assets should not be released to the law firm. The plaintiff's bank, not knowing whether the funds in the account were exempt or not, froze the account. *Id*. In fact, the plaintiff's account solely contained exempt assets, and after 23 days, the bank released the account. *Id*. The plaintiff claimed that the attempt to seize exempt assets violated § 1692f of the FDCPA which prohibits using "unfair or unconscionable means" to collect debts. 15 U.S.C. § 1692f. In rejecting the plaintiff's argument, the Seventh Circuit stated that the defendant law firm had not in fact violated either the federal Social Security Act or Illinois law with respect to claiming exemptions and, even if it had, § 1692f does not so much as hint at being an enforcement mechanism for other rules of state and federal law.

*Beler* is inapposite here because plaintiff is not claiming that defendants violated any law other than the FDCPA. Plaintiff's claims depend on the meaning of "deceptive" in 15 U.S.C. §1692e. In any event, *Beler* only addressed claims under § 1692f (unfair practices), not § 1692e (false statements). *Beler*, 480 F.3d at 474.

**F.    The FTC, CFPB, OCC, FDIC and FRB Consent Orders Are Entitled To Either *Chevron* or *Skidmore* Deference**

Defendants assert (Def. Br., p. 6) that the consent decrees and orders with the FTC in *United States of America v. Asset Acceptance, LLC*, No. 8:12-cv-182-T-27EAJ (M.D. Fla. 2012) and the CFPB, the FDIC, the FRB, and the OCC in three cases with different American Express-related entities, 2012-CFPB-0002; 2012-CFPB-0003; 2012-CFPB-0004, are not entitled to deference because (a) the FTC did not have rulemaking authority over debt collectors and (b) "consent orders apply only to the parties involved and not third parties like defendants here."

Defendants assert that deference is appropriate only where the agency has rulemaking authority. This is contrary to the latest Supreme Court decision on the subject, *City of Arlington, Tex. v. F.C.C.*, 133 S.Ct. 1863, 1874, 2013 WL 2149789 (May 20, 2013), where the court stated: "What the dissent needs, and fails to produce, is a single case in which a general conferral of rulemaking or adjudicative authority has been held insufficient to support Chevron deference for an exercise of that authority within the agency's substantive field. There is no such case .. . ." *Chevron* deference extends to interpretations reached in adjudications, *Trans Union Corp. v. FTC*, 81 F.3d 228, 230 (D.C. Cir.1995) (citing *Midtec Paper Corp. v. United States*, 857 F.2d 1487, 1497 (D.C. Cir.1988)), interpretations arising pursuant to consent decrees and even positions in *amicus* briefs. *Commonwealth v. Fremont Investment & Loan*, 452 Mass. 733, 897 N.E.2d 548 (2008) (accorded deference to concepts of unfairness indicated by an FDIC consent decree governing mortgage lending standards); *State of Alaska v. O'Neill Investigations*, 609 P.2d 520 (1980) (gave deference to FTC administrative interpretations of state unfair and deceptive practices act derived from consent decrees); *Kline v. Mortgage Electronic Security Systems*,

3:08cv408, 2010 WL 6298271, 2012 U.S. Dist. LEXIS 55366 (S.D. Ohio April 19, 2012) (court

accorded deference to agency position in *amicus* brief, reversing prior contrary ruling).

In any event, the CFPB has adopted the FTC's position. Congress did grant rule-making

authority to the CFPB, which has taken over much of the FTC's enforcement responsibility with

respect to debt collectors. In addition, this court has extended substantial deference to the FRB

"because of the important interpretive powers granted to the agency in this very complex field."

*Croysdale v. Franklin Savings Association*, 601 F.2d 1340, 1344 n.4 (7th Cir. 1979). *See also*

*Smith v. No. 2 Galesburg Crown Finance Corp.*, 615 F.2d 407 at 417-418 (7th Cir. 1980).  Finally,

the Supreme Court has held that the FTC was obligated to define "deceptive" in the FTC Act

"with particularity by the myriad of cases from the field of business.'" *FTC v. Colgate-Palmolive*

*Co.*, 380 U.S. 374, 384-85 (1965).  "This statutory scheme necessarily gives the commission an

influential role in interpreting §5 and in applying it to the facts of particular cases arising out of

unprecedented situations. Moreover, as an administrative agency which deals continually with

cases in the area, the commission is often in a better position than are courts to determine when a

practice is 'deceptive' within the meaning of the Act. This court has frequently stated that the

commission's judgment is to be given great weight by reviewing courts. This admonition is

especially true with respect to allegedly deceptive advertising since the finding of a §5 violation

in this field rests so heavily on inference and pragmatic judgment. . . ."  *Id.*, 380 U.S. at 385.

Contrary to defendants' argument, consent orders and decrees are not merely agreements

by particular defendants.  The decision of an agency to file a complaint and accept a consent order

represents its determination that the conduct complained of violates the relevant statute  – here,

that the failure to disclose the time-barred nature of a debt is "deceptive." The decision of an

agency to file a complaint represents its construction of the relevant statutes, in this case both the

FTC Act and the FDCPA, even if the proceeding is resolved by a consent decree.  *FTC v. Mandel*

*Bros.*, 359 U.S. 385, 391 (1959); *Ramson v. Layne*, 668 F.Supp. 1162, 1168-69 (N.D.Ill. 1987); *In*

*re TJX Companies Retail Security Breach Litigation*, 564 F.3d 489, 496-97 (1st Cir. 2009);

14

*Schubach v. Household Finance Corp.*, 375 Mass. 133, 135, 376 N.E.2d 140 (1978); *PMP Assocs., Inc. v. Globe Newspaper Co.*, 366 Mass. 593, 596, 321 N.E.2d 915 (1975); *Commonwealth v. Fremont Inv. & Loan*, 452 Mass. 733, 747-48, 897 N.E.2d 548 (2008); *State v. O'Neill Investigations, Inc.*, 609 P.2d 520, 529 (Alaska 1980).

Defendants miscite *Altria Group, Inc. v. Good*, 555 U.S. 70 (2008), regarding the effect of a consent decree. *Altria* holds that a consent judgment enjoining *certain* misrepresentations does not mean that the agency approves all *other* representations on the same subject: "the decree only enjoined conduct." Plaintiff's argument in this case does not depend on any such negative inference. Plaintiff contends that agency complaints alleging that it is deceptive for one collecting a time-barred debt to fail to disclose that the debt is time-barred, and consent decrees imposing that requirement, represent an agency determination that it is deceptive for one collecting a time-barred debt to fail to disclose that the debt is time-barred.

Defendants also misuse CFPB Examination Procedures requiring agency personnel to determine if an entity demands payment of time-barred debts and, if so, "what representations, if any, the entity makes in its written and oral communications with consumers regarding the time-barred nature of the debt and its ability to sue on the debt." (Def.Br., p. 12) The examination procedures are exactly that – a checklist of information to obtain – not a statement of when the information obtained is considered to disclose a violation of law.

## CONCLUSION

For the foregoing reasons, and those set forth in his opening brief, plaintiff respectfully asks this court to reverse the judgment of dismissal and reinstate Count I of the original complaint.  Alternatively, plaintiff requests that he be allowed to proceed on the amended complaint.

Respectfully submitted,

s/Daniel A. Edelman
Daniel A. Edelman

15

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Tiffany N. Hardy
EDELMAN, COMBS, LATTURNER
      & GOODWIN, LLC
120 South LaSalle St., Suite 1800
Chicago, IL 60603
(312) 739-4200
(312) 419-0379 (fax)

## CERTIFICATE OF SERVICE

I, Daniel A. Edelman, certify that on July 16, 2013, the preceding brief was filed with the court electronically, and that a copy of the same was served upon counsel for all appellees, David M. Schultz and Stephen R. Swofford, by operation of the court's electronic filing system, and also by U.S. Mail, as follows:

David M. Schultz
Stephen R. Swofford
Hinshaw & Culbertson LLP
222 N. LaSalle Street, Suite 300
Chicago, IL 60601
dschultz@hinshawlaw.com
sswofford@hinshawlaw.com

s/Daniel A. Edelman
Daniel A. Edelman

## TYPE VOLUME CERTIFICATION

In accordance with Fed.R.App.P. 32(a)(7)(C), I, Daniel A. Edelman, certify that this brief meets the type-volume limitation of Seventh Circuit Rule 32(b) in that it contains 5,204 words according the word-counting feature of the WordPerfect 12 word processor application.

s/Daniel A. Edelman
Daniel A. Edelman